**The People of the State of Illinois, Plaintiff-Appellee, v. Leighton McMillian, et al., Defendants-Appellants.**

**Gen. Nos. 51,211, 51,212. (Consolidated.)**

First District, Fourth Division.

February 14, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

---

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED

Burglary.

JUDGMENT

After a bench trial, the court found both defendants guilty and sentenced them to terms of three to eight years.

CONTENTION ON APPEAL

The evidence was insufficient to establish defendants' guilt.

EVIDENCE

**For the State**

*Chris Fosco*

He owned a tavern at 2227 W. Taylor Street, Chicago. He locked the doors of the tavern when he closed up at 2:00 a. m. on December 14, 1965. On call from the police, he returned to the tavern at 4:00 a. m. and found the door lock broken, the door having been pried open with a knife or screwdriver. A cigarette machine and bowling machine had also been broken open and money removed. (There was no testimony as to how much money had been in these machines.) About $23 in silver coins—his "bank" for the following day—had been taken from the cash drawer.

*Mrs. Molly Messino*

On the way to her job at 2253 W. Taylor Street, she and her daughter noticed two colored men standing in front of Chris' Tavern as they drove by at about 2:45 a. m. They therefore drove around the block and when they came

back, Mrs. Messino saw that the two men were no longer there and the tavern door was ajar. She immediately returned home and called the police.

*Michael Vincent O'Donnell*

He was one of the two police officers who responded to Mrs. Messino's call. They arrived at the tavern at about 2:50 a. m., and looking through the window, they saw that there was a light on behind the bar and two negroes were standing there. After noticing that the front door had been forced, the officers entered the tavern and saw the two defendants duck down and crouch behind the bar. Upon an order to stand up with their hands up, McMillian stood up but Montgomery did not. Whereupon, the other policeman fired a shot high over the bar and Montgomery came up from his crouched position. On the floor between the defendants, the policemen found a paper bag containing $23.60 in coins. Upon searching defendants, a screwdriver was taken from McMillian and a switch-blade knife was found in Montgomery's pocket. All that defendants said to the policemen at the tavern was "Give us a break."

*Anthony Gaudio*

He was a police officer who questioned defendants in the lockup at the police station. When he asked them if they had broken into the tavern, McMillian answered, "Yes, we did." McMillian also said, in response to a further question, "We were just walking by and the place looked easy enough to make, so we decided to hit it." Montgomery nodded his head in agreement with both these statements. Gaudio's investigation at the tavern confirmed Fosco's testimony that the tavern door, the cigarette machine, and an amusement machine had been broken open.

**For the defense**

*William Montgomery, defendant*

He and the codefendant had been to a party which they left about 1:30 a. m. While walking down Taylor Street,

117

they decided to get a drink. Approaching the door of Chris' Tavern which was open, they "saw two figures already in the tavern." As the defendants entered, the "two figures went straight towards the back" from behind the bar and out the rear entrance. Defendants then looked behind the bar to see if anybody was hurt. In so doing, they noticed that the front of a machine had been removed. The police came in right behind defendants ("spontaneously to us coming in"), and when one of the policemen fired a shot, defendants ducked behind the bar. When they were searched by Officer O'Donnell, Montgomery voluntarily gave him a switchblade knife which had been in his pocket, and the policeman picked up the screwdriver from the floor. Montgomery had $5 and some change in his pocket at the time. He denied taking any money from the machines or the cash drawer, and did not notice a brown bag.

*Leighton McMillian, defendant*

He corroborated the testimony of Montgomery throughout, and denied ever having seen the screwdriver before. He also denied that either he or his codefendant had made the inculpatory statements testified to by the police witnesses. He had some money in his pocket at the time.

OPINION

█ Seldom does the State have the opportunity, as it did in this case, of offering in evidence a testimonial description of police officers catching the defendants in the act of committing the crime of burglary. This makes it extremely difficult to defend in the trial court, and even more difficult to present grounds for reversal on appeal. Defendants argue here on the basis of two facts: (1) that Officer O'Donnell did not mention the firing of a shot while testifying in the State's case in chief, but only in rebuttal after defendants had testified to it, and (2) that the $23.60 found in the paper bag leaves some money unaccounted for, and is thus consistent with defendants'

118

testimony that someone else was there ahead of them. These matters, say defendants, cast a reasonable doubt upon the State's otherwise airtight case. We think they do not. When the evidence was all in, there was no difference between the description of the shooting as told by defendants and as told by the police officer. As to the money, there was no testimony as to how much, if any, there had been in the machines prior to the burglary, and both defendants had some money in their pockets when apprehended. While there may have been some confusion on the part of the tavern keeper as to the source of the coins in the paper bag, his testimony in this regard demonstrates only that fact, and does not serve to raise a reasonable doubt of defendants' guilt when considered with all the other evidence which was overwhelming.

 Furthermore, there is underlying defendants' argument in this court the question of the credibility of the witnesses, which is, of course, a matter for the trial court.

DECISION

The judgment of the Circuit Court is affirmed as to both defendants.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.